UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN A. GONZALEZ,<br><br>          Plaintiff,<br><br>    v.<br><br>JANE DOE, et al.,<br><br>          Defendants. | Case No. 25-cv-10236-EKL<br><br>**ORDER SCREENING COMPLAINT, ORDERING SERVICE** |

Plaintiff Juan A. Gonzalez, a *pro se* state prisoner, filed the instant civil rights lawsuit alleging that Defendants Sergeant R. Reynoso, Sergeant E. Aguirre, Sergeant A. Hidalgo, Sergeant Carrillo, and Warden Jane Doe of Salinas Valley State Prison ("SVSP") are conspiring to harm him. ECF No. 1-1.[1] Plaintiff also filed a motion for a temporary restraining order or preliminary injunction, *see* ECF Nos. 3, 6, which will be addressed in a later order. In this Order, the Court screens the complaint pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court ORDERS service of the complaint.

**I.    LEGAL STANDARDS**

    **A.    Standard of Review**

Federal courts engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C.

---

[1] Plaintiff mailed his complaint and other case-initiating documents. ECF No. 1. In doing so, he failed to comply with the Northern District of California's General Order No. 76 ("GO 76"), which requires prisoners in the custody of the California Department of Corrections and Rehabilitation to submit case-initiating documents to the Court by electronic mail. Given the seriousness of his allegations, the Court deems the case-initiating documents filed despite the technical deficiency in filing.

1  § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims
2  that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek
3  monetary relief from a defendant who is immune from such relief. *Id*. § 1915A(b)(1)-(2). *Pro se*
4  pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th
5  Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### B.  Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liability may be imposed on an individual defendant under Section 1983 if the plaintiff can show that the defendant's actions actually and proximately caused the deprivation of a federally protected right. *Lemire v. Cal. Dep't of Corrections & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a constitutional right within the meaning of Section 1983 if he does an affirmative act, participates in another's affirmative act, or fails to perform an act that he is legally required to do, causing the deprivation of which the plaintiff complains. *Leer*, 844 F.2d at 633.

**II.   PLAINTIFF'S ALLEGATIONS**

The Court summarizes the allegations set forth in Plaintiff's complaint below. *See* ECF No. 1-1.

At the heart of the complaint are Plaintiff's allegations that "corrupt[] correctional officers" at SVSP put his life at risk by attempting to place him in a prison cell with an inmate that officers knew had threatened to kill him. ECF No. 1-1 at 3. The complaint cites to a specific incident where Sgt. Reynoso and others allegedly tried to force him into a cell with said inmate. Plaintiff alleges that prior to the incident, the inmate told Plaintiff that there was "a green light for [him] to get kill[ed]." *Id.* (alleging that the inmate was threatening Plaintiff "for the charges that [he had been] . . . accused of."). Plaintiff then informed Reynoso and other unnamed sergeants about the threat prior to the incident. *Id.* When Plaintiff refused to walk into the cell out of fear for his safety, the officers accused him of "resisting" despite knowing of the threat.[2] *Id.* Plaintiff also alleges Sgt. Hidalgo failed to protect him when she conducted a "fak[e]" investigation of the incident and told Plaintiff that the video cameras did not show another inmate speaking to him or threatening to kill him. *Id.* at 6.

On other occasions, Reynoso allegedly "acted maliciously and sadistically" by stepping on the chains on Plaintiff's feet in order to harm him and loudly stated that Plaintiff is a rapist so other prisoners would hear, putting Plaintiff's life at risk. *Id.* at 3. Plaintiff denies that his convictions were related to rape.

Plaintiff alleges that another correctional officer, Sgt. Aguirre, conspired to get him killed by trying to force him to go into an unspecified yard. ECF No. 1-1 at 4. Plaintiff alleges that he had informed Aguirre and other staff members that that he feared for his life because there were prisoners who wanted to kill him in that yard. Plaintiff provided them with the prisoners' names and nicknames so they could conduct an investigation into the matter. *Id.* Aguirre refused to investigate, instead trying to force Plaintiff into the yard. Plaintiff sat on the ground and refused to walk out of fear for his safety. *Id.* On another occasion, Plaintiff allegedly reported unspecified

---

[2] It is not clear from the complaint whether Plaintiff ever entered the cell during the incident or whether he is currently placed in that location.

3

safety concerns to Aguirre and a female sergeant inside the dayroom. *Id.* at 5. A Black prisoner overheard the conversation and allegedly told the other prisoners in the area to "kill cuz green light," and Plaintiff told the female sergeant about it. *Id.* The female sergeant told Plaintiff that the other inmate did not say anything. *Id.* Plaintiff further alleges that unnamed officers "fake[d] a resisting" and injured him by "splitting his chin open," and that he was transported to the hospital following the incident.[3] *Id.* at 4-5.

The complaint also states that Sgt. Carrillo failed to intervene or protect him after a mental health provider refused to provide medical care, called Plaintiff a rapist, and said that he hoped Plaintiff "get[s] kill[ed]." ECF No. 1-1 at 7-8. Plaintiff adds that Carrillo's failure to report the doctor violated state regulations. *Id.* Plaintiff asserts that Carrillo allowed her staff to "fake a resisting" and assault Plaintiff by slamming him on the ground, and then allegedly coached them into manipulating their cameras and audio to hide what happened.[4] *Id.* at 7. Carrillo also allegedly told Reynoso to kill Plaintiff. *Id.*

On September 27, 2025, at around 10:30 p.m., Plaintiff had an "accident," although the nature of the accident is not specified in the complaint. ECF No. 1-1 at 3. Plaintiff alleges that in response to the accident, unnamed individuals gave him a "manipulated RVR [rules violation report]." *Id.* The unnamed individuals were allegedly trying to cover up their own corruption. *Id.* Plaintiff alleges that he unfairly lost his good credit, level status, and privileges as a result of fake RVRs. *Id.* at 5.

In addition, Plaintiff alleges that the warden of SVSP failed to ensure officers were properly trained, and that Plaintiff has been assaulted by officers and prisoners multiple times as a result. ECF No. 1-1 at 9. Other prisoners have been killed at SVSP under similar circumstances. *Id.* Plaintiff seeks monetary damages and injunctive relief. *Id.* at 3.

---

[3] To the extent that Plaintiff is attempting to raise claims against unnamed individuals who were involved in the incidents at issue in the complaint, the Court DISMISSES those claims with leave to amend so Plaintiff can either (1) determine and provide names of the currently unnamed individuals, or (2) allege claims against them as "Doe" defendants and provide any identifying information about them.

[4] The complaint does not specify whether this incident occurred on the same day as Plaintiff's mental health visit.

**III.   ANALYSIS**

Plaintiff's claims against each defendant are discussed below.

### A.   Sgt. Reynoso & Sgt. Hidalgo

It is well established that under the Eighth Amendment, prison officials have a duty to take reasonable steps to protect prisoners from physical harm. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). This includes an affirmative duty to protect prisoners from violence at the hands of other prisoners. *See id.* at 833. The failure of prison officials to protect prisoners from attacks by other prisoners or dangerous conditions at the prison violates the Eighth Amendment when (1) the deprivation alleged is, "objectively, sufficiently serious," and (2) the official is, subjectively, deliberately indifferent to the prisoner's safety. *Id.* at 835. "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Liability may follow only if a prison official "knows that [the prisoner] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

Here, Plaintiff alleges that Reynoso (1) knowingly tried to force Plaintiff into a cell with an inmate who had threatened to kill him, and (2) loudly called Plaintiff a rapist so that other prisoners could hear in an attempt to cause Plaintiff harm. ECF No. 1-1 at 2-3. In a related claim, Plaintiff alleges that Hidalgo faked conducting a "fak[e]" investigation into the threat, before concluding that his allegations were not true. *Id.* at 6.

#### 1.   Forced Placement in Cell

Liberally construed, Plaintiff's allegation that Reynoso tried to force him into a cell despite Plaintiff notifying him that the prisoner in that cell had threatened to kill him due to Plaintiff's alleged status as a rapist, states a cognizable Eighth Amendment claim of deliberate indifference. *See Manzanillo v. Lewis*, 267 F. Supp. 3d 1261, 1269-74 (N.D. Cal. 2017) (denying defense summary judgment motion where plaintiff was allegedly stabbed by rival gang member after a guard left his cell door open knowing that the rival gang member was present in the area); *Clem v. Lomeli*, 566 F.3d 1177, 1180 (9th Cir. 2009) (holding that prison officials' failure to respond after

1  plaintiff notified officers that a drunk cellmate had threatened to kill him amounted to deliberate

2  indifference). As to Hidalgo's conduct, liberally construed, Plaintiff's allegation – that Hidalgo

3  pretended to investigate his complaint, but did not actually do so, and then concluded that

4  Plaintiff's complaints were unfounded so that he could be placed in the cell – states a cognizable

5  claim of deliberate indifference. *See Clem*, 566 F.3d at 1180.

### 2. Alleged Criminal Labeling

Plaintiff also states a cognizable Eighth Amendment deliberate indifference claim. *See Blacher v. Diaz*, No. 20-cv-01270-LAB-MDD, 2020 WL 565628, *6-7 (S.D. Cal. Sept. 23, 2020) (finding cognizable claim of deliberate indifference where correctional officers allegedly called plaintiff a rapist and child molester in front of other prisoners, leading a fellow prisoner to threaten plaintiff's life); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989) (labeling prisoner a "snitch" in the presence of other prisoners states a claim of deliberate indifference to their safety); *Adams v. Tilton*, No. 07-CV-00791 GSA PC, 2009 WL 2915100, at *13 (E.D. Cal. Sept. 9, 2009) (calling plaintiff a "Chester" in front of other inmates is akin to calling him a "snitch"). Here, Plaintiff alleges that Reynoso loudly called him a rapist while other prisoners were nearby, and that Reynoso did so knowingly in an attempt to endanger his life. Notably, Plaintiff alleges that at least one inmate threatened to kill him due to his alleged status as a rapist. These allegations are sufficient for pleading purposes.

### B. Sgt. E. Aguirre

Plaintiff makes similar allegations against Aguirre, who allegedly forced Plaintiff to go into an unspecified yard despite Plaintiff's warnings that several inmates wanted to kill him, refused to investigate Plaintiff's allegations that he was in danger, and tried to forcibly take Plaintiff to the yard.[5] ECF No. 1-1 at 4. Plaintiff also contends that Aguirre did not respond to a prisoner's comment saying "kill cuz green light" while Plaintiff was in the dayroom. *Id.* at 5.

---

[5] The complaint does not specify whether Aguirre was one of the officers who allegedly "fake[d] a resisting," which the Court construes as an allegation that officers "faked' that he was resisting their orders, which resulted in Plaintiff's hospitalization after he split his chin. *See* ECF No. 1-1 at 4-5.

### 1. Forced Transport to Yard

Liberally construed, Plaintiff states a cognizable claim of deliberate indifference related to the incident at the yard. *See Clem*, 566 F.3d at 1180. Plaintiff alleges that he notified Aguirre about individuals who wanted to kill him in the yard, and that Aguirre did not investigate the list of names and nicknames provided by Plaintiff. Despite the alleged risk of harm, Aguirre nonetheless tried to force him into the yard.

### 2. Dayroom Incident

Insofar as Plaintiff alleges a separate claim of deliberate indifference against Aguirre for his alleged failure to respond to an inmate's statement to "kill cuz green light," the complaint does not specify whether Aguirre heard the inmate's alleged statement, or whether Plaintiff informed Aguirre about the inmate's statement when Plaintiff expressed his concern to the female sergeant. ECF No. 1-1 at 5. Accordingly, Plaintiff has not shown that Aguirre knew he faced a substantial risk of harm and failed to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 847. The claim is dismissed with leave to amend so Plaintiff may address the deficiencies outlined above.

## C.   Sgt. Carrillo

Plaintiff accuses Carrillo of (1) failing to intervene after a mental health provider refused to treat him and stated he hoped for his death; (2) allowing and coaching her staff on how to avoid cameras while they slammed Plaintiff on the ground, and (3) telling Reynoso to kill him. ECF No. 1-1 at 7-8.

### 1. Mental Health Provider Incident

As to his first claim against Carrillo, Plaintiff fails to state a cognizable constitutional claim because, while the mental health provider's alleged words and conduct were wholly inappropriate, Plaintiff has not shown that, at the time of the incident, Carrillo was aware that he was in any danger as a result of the provider's words or alleged refusal to treat him. *See Farmer*, 511 U.S. at 847 (plaintiff must show that prison official "knows that [the prisoner] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."); *Watison v. Carter*, 668 F.3d 1108, 1113 (9th Cir. 2012) ("'the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons' of

7

which 'we do not approve,' but which do not violate the Eighth Amendment."). Plaintiff does not provide any information about the nature of his mental health visit or whether the provider's words or failure to treat him during the visit at issue placed him in any danger such that Carrillo's failure to intervene constituted deliberate indifference. At most, liberally construed, the allegations may show that Carrillo failed to follow policy by not reporting the mental health provider to a supervisor. *Cousins v. Lockyer,* 568 F.3d 1063, 1070 (9th Cir. 2009) (failure to follow internal prison policies does not rise to the level of a constitutional violation).

This claim is DISMISSED with leave to amend so Plaintiff may address the deficiencies outlined above.

### 2. Excessive Force Incident

Plaintiff's claim that Carrillo allowed and helped her staff avoid cameras as they slammed Plaintiff to the ground under false pretenses appears to be a claim of excessive force. The Eighth Amendment bars prison officials from using excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 5-6 (1992). Courts undertake a subjective inquiry as to whether the defendants acted with a sufficiently culpable state of mind and an objective inquiry to determine whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* at 4.

> Five factors bear on the excessive force analysis in a typical Eighth Amendment claim: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response."

*Bearchild v. Cobban*, 947 F.3d 1130, 1141 (9th Cir. 2020). Here, Plaintiff admits that he was attempting to prevent officers from moving him at the time he was slammed on the ground, and does not specify any injury as a result of this incident. In order to sufficiently allege a cognizable claim of excessive force, Plaintiff must provide further information about the circumstances of the alleged incident and the nature of the resulting injury if any.

This claim is DISMISSED with leave to amend so Plaintiff may address the deficiencies outlined above.

### 3. Instruction to Reynoso

As noted, Plaintiff alleges that Carrillo instructed Reynoso to kill him.

Although verbal harassment and abuse generally fails to state a claim cognizable under Section 1983, *see Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987), verbal harassment may violate the constitution when it is "unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage." *Cox v. Kernan*, No. 19-cv-1637-DB P, 2019 WL 6840136, at *5 (E.D. Cal. Dec. 16, 2019) (alterations in original) (quoting *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996)). Moreover, "[a] threat of deadly force made merely to inflict gratuitous fear and punishment when the party has both the opportunity to carry out the threat and evidences the intent to do so does state a cognizable claim under the Eighth Amendment." *Monroe v. Mortell*, No. 19-CV-2218-WBS-DMC-P, 2022 WL 624996, at *7 (E.D. Cal. Mar. 3, 2022), *report and recommendation adopted*, 2022 WL 1004715 (E.D. Cal. Apr. 4, 2022). Here, Plaintiff alleges that Carrillo instructed Reynoso to kill Plaintiff, and that Reynoso subsequently tried to force him into the cell with an inmate who threatened Plaintiff's life. Liberally construed, Plaintiff states a cognizable claim of Eighth Amendment deliberate indifference.

### D. Manipulated RVR

Plaintiff alleges that he received a "manipulated RVR" on September 27, 2025, following an accident. ECF No. 1-1 at 3. The claim does not include any more details and is conclusory only. *Twombly*, 550 U.S. at 555. Plaintiff fails to state any cognizable federal cause of action as to this alleged conduct, and it is DISMISSED with leave to amend so Plaintiff may address the deficiencies outlined above.

### E. Warden Jane Doe

Plaintiff also contends that the warden of SVSP failed to ensure officers were properly trained. ECF No. 1-1 at 9.

There is no *respondeat superior* liability under Section 1983, *i.e.*, no liability under the theory that one is liable simply because he supervises a person who has violated a plaintiff's rights. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). To state a claim for relief under

9

Section 1983 against a supervisor defendant, a plaintiff must allege facts that would support a claim that (1) the supervisor proximately caused the constitutional violation at issue; (2) the supervisor failed to properly train or supervise personnel resulting in the alleged deprivation; (3) the alleged deprivation resulted from custom or policy for which the supervisor was responsible; or (4) the supervisor knew of the alleged misconduct and failed to act to prevent future misconduct. *See Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984). When a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are insufficient to state a claim. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982); *Starr v. Baca*, 652 F.2d 1202, 1208 (9th Cir. 2011).

Here, Plaintiff does not allege that the warden was aware of any of the incidents. Nor does Plaintiff identify any specific deficiencies in training that led to his alleged constitutional violations or show that the warden proximately caused the constitutional violations at issue. *See Twombly*, 550 U.S. at 555. Plaintiff's claim against the warden is DISMISSED with leave to amend so Plaintiff may address the deficiencies outlined above.

## IV. CONCLUSION

The Court orders as follows:

1. Plaintiff's case-initiating documents (ECF No. 1-1) are DEEMED FILED. The Clerk shall docket the complaint.
2. Plaintiff states the following cognizable claims:
    a. Eighth Amendment deliberate indifference claims against Reynoso and Hidalgo based on Plaintiff's allegations that they knowingly attempted to force him into a cell with a person who had threatened to kill him;
    b. Eighth Amendment deliberate indifference claim against Reynoso based on Plaintiff's allegation that Reynoso loudly called him a rapist in front of other prisoners in order to put Plaintiff at risk of harm;

10

   c. Eighth Amendment deliberate indifference claim against Aguirre based on Plaintiff's claim that Aguirre knowingly attempted to force him onto a yard with prisoners who wanted to harm him;

   d. Eighth Amendment deliberate indifference claim against Carrillo based on Plaintiff's claim that Carrillo told Reynoso to kill him.

3. All other claims and defendants are DISMISSED with leave to amend as specified above. If Plaintiff wishes to file an amended complaint, he must do so within **twenty-eight (28) days** of the date this order. The amended complaint must include the caption and civil case number used in this order and the words "Amended Complaint" on the first page. Because an amended complaint completely replaces the original complaint, Plaintiff must include in it all the claims he wishes to present, including the cognizable claims identified above. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). He may not incorporate material from the original complaint by reference. If Plaintiff does not file the amended complaint within the designated time, the case will proceed only as to the cognizable claims against Reynoso, Hidalgo, Aguirre, and Carrillo.

4. Defendants Reynoso, Hidalgo, Aguirre, and Carrillo shall be SERVED. Service shall proceed under CDCR's e-service pilot program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the Clerk of the Court is directed to serve on CDCR via email the following documents: the operative complaint (ECF No. 1-1), this order, a CDCR Report of E-Service Waiver form, and a summons.

5. **The allegations in this matter are extraordinary and require immediate service.** No later than **two days** after service of this order via email on CDCR, CDCR shall provide the Court a completed CDCR Report of E-Service Waiver advising the Court whether Defendants will be waiving service of process without the need for service by the United States Marshal Service ("USMS") or whether any Defendant declined to waive service. CDCR also shall provide a copy of the

11

CDCR Report of E-Service Waiver to the California Attorney General's Office, which, within **three days of service**, shall file with the Court a waiver of service of process for the Defendants waiving service.

Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each Defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-285 Form. The Clerk shall provide to the USMS the completed USM-285 form and copies of this order, summons, and operative complaint for service upon each Defendant who has not waived service. The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

Additionally, the Clerk shall mail a copy of this order to Plaintiff and the California Attorney General's Office at monica.anderson@doj.ca.gov and william.kwong@doj.ca.gov.

6. In order to expedite the resolution of this case, the Court orders the following briefing schedule:

   a. No later than **45 days** from the date of service, Defendants will file a motion for summary judgment or other dispositive motion. The motion will be supported by adequate factual documentation, shall conform in all respects to Federal Rule of Civil Procedure 56, and will include as exhibits all records and incident reports stemming from the events at issue. If Defendants are of the opinion that this case cannot be resolved by summary judgment or other dispositive motion, they will so inform the Court prior to the date the dispositive motion is due. All papers filed with the Court will be promptly served on Plaintiff.

   b. At the time the dispositive motion is served, Defendants will also serve, on a separate paper, the appropriate notice or notices required by *Rand v. Rowland*, 154 F.3d 952, 953-54 (9th Cir. 1998) (en banc), and *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.4 (9th Cir. 2003). *See Woods v. Carey*, 684

F.3d 934, 940-41 (9th Cir. 2012) (*Rand* and *Wyatt* notices must be given at the time motion for summary judgment or motion to dismiss for non-exhaustion is filed, not earlier); *Rand*, 154 F.3d at 960 (separate paper requirement).

    c. Plaintiff's opposition to the dispositive motion, if any, will be filed with the Court and served upon Defendants no later than **28 days** from the date the motion was served upon him. Plaintiff must read the attached page headed "NOTICE -- WARNING," which is provided to him pursuant to *Rand*, 154 F.3d at 953-54, and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988). If Defendants file a dispositive motion claiming that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), he should take note of the attached page headed "NOTICE -- WARNING (EXHAUSTION)," which must be provided to him as required by *Wyatt*, 315 F.3d at 1120 n.4.

    d. If Defendants wish to file a reply brief, they shall do so no later than **14 days** after the opposition is served upon them.

    e. The motion shall be deemed submitted as of the date the reply brief is due. Absent a further order of the Court, no hearing will be held on the motion.

7. All communications by Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

8. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further Court order is required before the parties may conduct discovery or schedule depositions.

9. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address." He also must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure

to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated:   December 8, 2025

_____
Eumi K. Lee
United States District Judge