United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUAN A. GONZALEZ,
Plaintiff,

v.

JANE DOE, et al.,
Defendants.

Case No. 25-cv-10236-EKL

**ORDER GRANTING DEFENDANTS' MOTIONS TO SCREEN AMENDED COMPLAINT AND FOR AN EXTENSION OF TIME, SCREENING AND SERVING AMENDED COMPLAINT, AND REFERRING MATTER TO FEDERAL PRO SE PROJECT**

Re: ECF Nos. 40, 41, 42

Plaintiff Juan A. Gonzalez, a *pro se* state prisoner, filed the instant civil rights lawsuit alleging that several Salinas Valley State Prison ("SVSP") correctional officers were conspiring to harm him. ECF No. 1-1. The Court screened the complaint and dismissed it with leave to file an amended complaint. *See* ECF No. 11. Plaintiff filed an amended complaint,[1] which is now before the Court for screening pursuant to 28 U.S.C. § 1915A. *See* ECF No. 40. The Court DISMISSES without prejudice all claims against Doe defendants, DISMISSES certain claims and defendants without leave to amend, ORDERS SERVICE of additional named defendants as specified below, and REFERS this matter to the Federal Pro Se Project.

[1] Defendants E. Aguirre, Carillo, A. Hidalgo, and R. Reynoso subsequently filed motions seeking that the Court screen Plaintiff's amended complaint and grant additional time for their dispositive motion pending screening of the amended complaint. *See* ECF Nos. 41, 42. Defendants' motion seeking screening of Plaintiff's amended complaint is GRANTED. *See* ECF No. 41. Finding good cause, the Court also GRANTS the motion to extend time, and AMENDS the dispositive motion briefing schedule as specified at the conclusion of this order. *See* ECF No. 42; *see also* Fed. R. Civ. P. 6(b)(1)(A), 16(b)(4).

United States District Court
Northern District of California

## I. LEGAL STANDARDS

### A. Standard of Review

Federal courts engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1)-(2). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### B. Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liability may be imposed on an individual defendant under Section 1983 if the plaintiff can show that the defendant's actions actually and proximately caused the deprivation of a federally protected right. *Lemire v. Cal. Dep't of Corrections & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a

constitutional right within the meaning of Section 1983 if he does an affirmative act, participates in another's affirmative act, or fails to perform an act that he is legally required to do, causing the deprivation of which the plaintiff complains. *Leer*, 844 F.2d at 633.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff's allegations arise from several incidents that took place while he was housed at SVSP; each incident is summarized below. ECF No. 40 at 1.

### A. Dayroom Incident

Plaintiff alleges that on the first day he was moved into his building at SVSP, he encountered a prisoner in the dayroom who stated that there was a "green light" to kill Plaintiff in front of several prisoners and sergeants. ECF No. 40 at 4. Plaintiff approached Officer Espinoza, Sergeant Aguirre, and Sergeant Hidalgo to discuss the comment, but they allegedly "ignored [Plaintiff] and acted like they didn't hear[] nothing." *Id.* Hidalgo "pretended" to view the security video of the incident but "lie[d] and said that no inmates . . . talke[ed] to [Plaintiff]." *Id.* at 6. Later, Aguirre allegedly "fake[ed] a safety concern investigation and clear[ed] [Plaintiff] to go inside a cell and dorm w[h]ere there were inmates that wanted to kill [Plaintiff]." *Id*. at 4. Aguirre reportedly failed to investigate the matter or follow regulations requiring that Plaintiff be placed in temporary restricted housing while the investigation was pending. *Id.* Plaintiff provided Aguirre with the last names, nicknames, and gang affiliation of the inmates as part of the investigation. *Id.*

### B. Yard Incidents

The amended complaint also describes three incidents in an unspecified yard.

***Incident No. 1:*** Plaintiff alleges that, after Aguirre failed to properly investigate the dayroom incident, Aguirre knowingly told Officer Mendez[2] and Officer John Doe to force Plaintiff into a yard with prisoners who were on Plaintiff's list of those who wanted to kill him. ECF No. 40 at 4. As Plaintiff was escorted to the yard, he allegedly stopped walking out of fear for his safety, prompting Officers Mendez and Doe to grab Plaintiff by the arms and head. *Id.* The officers slammed Plaintiff onto the ground, "splitting" his chin. *Id.* Plaintiff was sent to the

[2] Plaintiff refers to Officer Mendez, ECF No. 40 at 4, and a psychiatrist named Mendez, *id.* at 7, in his amended complaint. The Court refers to them by their title for clarity.

United States District Court
Northern District of California

hospital for treatment. *Id*.

***Incident No. 2:*** When Plaintiff returned from the hospital following the "splitting" of his chin, Aguirre allegedly knowingly placed Plaintiff in a yard that contained people who wanted to kill Plaintiff. ECF No. 40 at 4. Doe officers reportedly attempted to force Plaintiff into the yard, and Plaintiff attempted to sit down to avoid being moved; the Doe officers then slammed Plaintiff to the ground. *Id*. at 5. As a result, Plaintiff's chin was "split[]" a second time. *Id.*

***Incident No. 3:*** On another occasion, Sergeant Carrillo allegedly knowingly brought Plaintiff to a yard with prisoners who wanted to kill Plaintiff, then instructed Sergeant Reynoso to "get [Plaintiff] kill[ed]." ECF No. 40 at 7. Plaintiff asserts that Carrillo blocked her body worn camera and manipulated the video and audio to hide evidence of the incident. *Id.*

**C. Cell Incident**

On another occasion, Reynoso allegedly ignored Plaintiff's assertions that his life was in danger as Reynoso attempted to place Plaintiff into a cell with a prisoner who had threatened to kill Plaintiff. ECF No. 40 at 2. Plaintiff states that when Reynoso and other unnamed officers attempted to force him into the cell, the other prisoner "got up from his bed in a[n] aggressive way and started getting ready to fight [Plaintiff]." *Id.* After Plaintiff refused to enter the cell, he was escorted out of the building by Doe officers, Officer Martinez, and Reynoso. *Id.* at 3. The officers allegedly "slam[med]" Plaintiff's face. *Id.* Martinez and Reynoso also allegedly made Plaintiff face a wall outside the building as Reynoso loudly called him a "rapist" for other prisoners to hear. *Id.* Reynoso then stepped on the chains of Plaintiff's handcuffs "with the intention of causing harm." *Id.* Plaintiff states that Reynoso is a member of the "Green Wall," which he describes as a "gang for corrupted correctional officers" who bring contraband into the prison and work with prisoners to kill other prisoners. *Id.*

**D. Incident Involving Psychiatrist**

Plaintiff alleges that Psychiatrist Mendez called him a "rapist," instructed Carrillo to "get [Plaintiff] kill[ed]," and refused to provide Plaintiff with healthcare in retaliation for a lawsuit Plaintiff filed against the psychiatrist. ECF No. 40 at 7, 9. Carrillo, who was present at the time of the incident, allegedly failed to protect Plaintiff from the psychiatrist's threats. *Id.* at 7.

**E. Allegations Regarding Warden**

Plaintiff alleges that the warden of SVSP was aware of everything taking place at the prison, including "correctional officers and sergeants['] corruption[]," and states that the warden and correctional officers are "allowing inmates to kill other inmates." ECF No. 40 at 8. Plaintiff also asserts that the warden ignored correctional officers who exposed prisoners' charges and encouraged the killing of prisoners, and that the warden failed to train and supervise his staff. *Id.*

**F. "Fake" Resistance Incidents**

Throughout the amended complaint, Plaintiff alleges that Doe officers "fake[d] a resisting" in order to use force against him. *See, e.g.*, ECF No. 40 at 3, 6, 7.

## III. ANALYSIS

The Court discusses each claim and defendant below.

**A. Doe Defendants**

As noted, Plaintiff makes several allegations against Doe defendants for their alleged role in "fak[ing] a resisting" and using force against him. *See, e.g.*, ECF No. 40 at 3, 6, 7. The Court interprets the allegations as raising claims of excessive force. The Eighth Amendment bars prison officials from using excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 5-6 (1992). Courts undertake a subjective inquiry as to whether the defendants acted with a sufficiently culpable state of mind and an objective inquiry to determine whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* at 8.

Here, Plaintiff alleges that officers used unjustified force against him; and liberally construing his allegations, he may be able to state cognizable claims against Doe defendants.[3] However, the use of Doe defendants is generally disfavored within the Ninth Circuit, and Plaintiff does not provide details about timing of the incidents involving the Doe defendants or regarding Doe defendants' identity such that prison officials could reasonably identify them by description. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Nevertheless, where the identity of

[3] The Court notes that Plaintiff does not distinguish between Doe defendants in his amended complaint, making it impossible for the Court to determine what actions to attribute to each Doe defendant.

alleged defendants cannot be known prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify them. *Id.*; *see also Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999). Accordingly, to afford Plaintiff an opportunity to discover the identity of the Doe defendants without further delaying resolution of this matter, the claims against all Doe defendants are DISMISSED WITHOUT PREJUDICE to Plaintiff naming these defendants in a separate filing, within 180 days of this Order, once Plaintiff learns their identity through discovery. *See Brass v. County of Los Angeles*, 328 F.3d 1192, 1195-98 (9th Cir. 2003).

**B. Dayroom Incident**

Plaintiff raises several allegations against multiple officers in connection with the incident in the dayroom.

It is well established that under the Eighth Amendment, prison officials have a duty to take reasonable steps to protect prisoners from physical harm. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). This includes an affirmative duty to protect prisoners from violence at the hands of other prisoners. *See id.* at 833. The failure of prison officials to protect prisoners from attacks by other prisoners or dangerous conditions at the prison violates the Eighth Amendment when (1) the deprivation alleged is, "objectively, sufficiently serious," and (2) the official is, subjectively, deliberately indifferent to the prisoner's safety. *Id.* at 835. "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Liability may follow only if a prison official "knows that [the prisoner] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

Here, Plaintiff alleges that Espinoza, Aguirre, and Hidalgo ignored a prisoner's deliberate incitement of other prisoners to kill Plaintiff. He also alleges that Hidalgo and Aguirre falsely claimed that they investigated the matter and fabricated their findings that Plaintiff's life was not in danger. Plaintiff states a cognizable claim of deliberate indifference against Espinoza, Aguirre, and Hidalgo in connection with this incident. *See Manzanillo v. Lewis*, 267 F. Supp. 3d 1261, 1269-74 (N.D. Cal. 2017) (denying defense summary judgment motion where plaintiff was

allegedly stabbed by rival gang member after a guard left his cell door open knowing that the rival gang member was present in the area); *Clem v. Lomeli*, 566 F.3d 1177, 1180 (9th Cir. 2009) (holding that prison officials' failure to respond after plaintiff notified officers that a drunk cellmate had threatened to kill him amounted to deliberate indifference).

**C. Yard Incidents**

The Court discusses the three alleged incidents that took place in unspecified yards below.

***Incident No. 1:*** Plaintiff alleges that Aguirre knowingly told Officer Mendez and John Doe to force Plaintiff into a yard with prisoners who wanted to kill Plaintiff, and that Officer Mendez "slammed" Plaintiff to the ground after he stopped walking out of fear for his safety while being escorted into the yard. ECF No. 40 at 4. Plaintiff states a cognizable Eighth Amendment claim against Aguirre in connection with this incident. *See Manzanillo*, 267 F. Supp. 3d at 1269-74. Plaintiff also states a cognizable Eighth Amendment excessive force claim against Mendez in connection with Mendez's alleged conduct in slamming Plaintiff and "splitting" his chin. ECF No. 40 at 4.

***Incident No. 2:*** Plaintiff's allegation that, following Incident No. 1, Aguirre again knowingly placed Plaintiff in a yard with prisoners who wanted to kill him states a cognizable claim for deliberate indifference. *See Manzanillo*, 267 F. Supp. 3d at 1269-74.

***Incident No. 3:*** Plaintiff also alleges that Carrillo brought him into a yard with prisoners who wanted to kill him, and then instructed Reynoso to "get [him] kill[ed]." ECF No. 40 at 7. Although verbal harassment and abuse generally fails to state a claim cognizable under Section 1983, *see Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987), verbal harassment may violate the constitution when it is "unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage." *Cox v. Kernan*, No. 19-cv-1637-DB-P, 2019 WL 6840136, at *5 (E.D. Cal. Dec. 16, 2019) (alterations in original) (quoting *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996)). Moreover, "[a] threat of deadly force made merely to inflict gratuitous fear and punishment when the party has both the opportunity to carry out the threat and evidences the intent to do so does state a cognizable claim under the Eighth Amendment." *Monroe v. Mortell*, No. 19-CV-2218-WBS-DMC-P, 2022 WL 624996, at *7 (E.D. Cal. Mar. 3,

United States District Court
Northern District of California

2022), *report and recommendation adopted*, 2022 WL 1004715 (E.D. Cal. Apr. 4, 2022). Liberally construing the amended complaint, Plaintiff states a cognizable claim of Eighth Amendment deliberate indifference against Carrillo in connection with this incident.

**D. Cell Incident**

Plaintiff alleges that Reynoso tried to force him into a cell with a prisoner who wanted to kill him, slammed Plaintiff's face, loudly called Plaintiff a "rapist" for other prisoners to hear, and stepped on the chains of Plaintiff's handcuffs. ECF No. 40 at 3. Plaintiff also alleges that Martinez, who was present throughout this encounter, participated by slamming Plaintiff's face and making Plaintiff face the wall as Reynoso called Plaintiff a rapist. *Id.*

Liberally construed, Plaintiff's allegations state cognizable claims of deliberate indifference and excessive force under the Eighth Amendment against Reynoso and Martinez. *See Manzanillo*, 267 F. Supp. 3d at 1269-74; *Blacher v. Diaz*, No. 20-cv-01270-LAB-MDD, 2020 WL 5656528, *6-7 (S.D. Cal. Sept. 23, 2020) (finding cognizable claim of deliberate indifference where correctional officers allegedly called plaintiff a rapist and child molester in front of other prisoners, leading a fellow prisoner to threaten plaintiff's life); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (noting that "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.") (citation modified); *Hudson*, 503 U.S. at 5-6.

**E. Incident Involving Psychiatrist**

Plaintiff alleges that Psychiatrist Mendez called him a "rapist," instructed Carrillo to "get [Plaintiff] kill[ed]," and refused to provide Plaintiff with healthcare in retaliation for his prior lawsuit. ECF No. 40 at 7, 9. Carrillo allegedly refused to protect Plaintiff from Psychiatrist Mendez's threats. *Id.* Liberally construing the allegations, Plaintiff states a cognizable claim of Eighth Amendment deliberate indifference against Psychiatrist Mendez for allegedly telling Carrillo to "get [Plaintiff] kill[ed]." *Id.* at 7; *see Monroe*, 2022 WL 624996 at *7. Plaintiff also states a claim of deliberate indifference against Carrillo for the same incident.

Additionally, Plaintiff states a cognizable claim of retaliation against Psychiatrist Mendez. "Within the prison context, a viable claim of First Amendment retaliation entails five basic

United States District Court
Northern District of California

elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled [or could chill] the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (citation modified); *accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Both filing a lawsuit and requesting healthcare are considered protected conduct for the purposes of the First Amendment. *See Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003); *Valencia v. Cal. Dep't of Corrections & Rehabilitation*, No. 23-cv-0831-SKO, 2024 WL 4453340, *5 (E.D. Cal. Oct. 9, 2024). Here, liberally construing the amended complaint, Plaintiff states a cognizable First Amendment retaliation claim pursuant to his allegations that, in response to Plaintiff's lawsuit against him, Psychiatrist Mendez refused to provide him with healthcare and instructed Carrillo to get Plaintiff killed.

**F. Allegations Regarding Warden**

Plaintiff alleges that the warden of SVSP was aware of everything taking place at the prison, including officer corruption and allowing prisoner violence against one another. ECF No. 40 at 8. Plaintiff also asserts that the warden ignored correctional officers who exposed prisoners' charges and encouraged the killing of prisoners, and that the warden failed to train and supervise his staff. *Id.*

There is no *respondeat superior* liability under Section 1983, *i.e.*, no liability under the theory that one is liable simply because he supervises a person who has violated a plaintiff's rights. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), *abrogated on other grounds by Kane v. Garcia Espitia*, 546 U.S. 9, 10 (1989). To state a claim for relief under Section 1983 against a supervisor defendant, a plaintiff must allege facts that would support a claim that (1) the supervisor proximately caused the constitutional violation at issue; (2) the supervisor failed to properly train or supervise personnel resulting in the alleged deprivation; (3) the alleged deprivation resulted from custom or policy for which the supervisor was responsible; or (4) the supervisor knew of the alleged misconduct and failed to act to prevent future misconduct. *See Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981); *Ybarra v. Reno Thunderbird*

*Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are insufficient to state a claim. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982); *Starr v. Baca*, 652 F.2d 1202, 1208 (9th Cir. 2011).

Here, Plaintiff alleges that the warden was deliberately indifferent by failing to supervise his or her staff, was aware that staff was exposing information about Plaintiff and other prisoners' conviction offenses, and was encouraging prisoners to kill one another. Although the issue is close, the Court finds that Plaintiff sufficiently alleges facts showing that the warden failed to supervise staff, leading to the constitutional violations alleged in his amended complaint. To the extent that Plaintiff alleges a failure to train, the Court notes that Plaintiff does not specify the type of training the warden failed to provide his or her subordinates. Accordingly, this portion of the claim must be DISMISSED.[4]

## IV. CONCLUSION

The Court orders as follows:

1. Defendants' motion to screen the amended complaint (ECF No. 41) is GRANTED.
2. Defendants' motion for an extension of time to file the dispositive motion (ECF No. 42) is GRANTED.
3. The Court has screened the amended complaint and finds that Plaintiff states the following cognizable claims:
    a. Eighth Amendment deliberate indifference claims against Espinoza, Aguirre, and Hidalgo based on their alleged failure to protect Plaintiff after a prisoner incited other prisoners to kill Plaintiff during the dayroom incident.
    b. Eighth Amendment deliberate indifference claim against Aguirre based on Plaintiff's allegations that Aguirre knowingly attempted to force him onto a

[4] As Plaintiff has already been provided an opportunity to amend this claim and has yet to allege facts showing a failure to train, dismissal is without leave to amend based on futility. *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal.").



United States District Court
Northern District of California

yard with prisoners who wanted to harm him on two occasions.

c. Eighth Amendment excessive force claim against Officer Mendez based on the alleged use of force against Plaintiff in connection with Incident No. 2 in the yard.

d. Eighth Amendment deliberate indifference claim against Carrillo based on Plaintiff's allegations that Carrillo took Plaintiff to a yard with prisoners who wanted to kill Plaintiff, told Reynoso to get Plaintiff killed, and failed to protect Plaintiff from Psychiatrist Mendez's threats.

e. Eighth Amendment deliberate indifference and excessive force claims against Reynoso and Martinez based on Plaintiff's allegations that Reynoso knowingly attempted to force Plaintiff into a cell with a person who wanted to kill him, slammed Plaintiff's face, loudly called Plaintiff a rapist so other prisoners would hear, and stepped on Plaintiff's handcuff chain, as well as Martinez's participation in the same incident.

f. Eighth Amendment deliberate indifference and First Amendment retaliation claims against Psychiatrist Mendez for allegedly telling Carrillo to get Plaintiff killed and refusing to provide medical treatment for Plaintiff in retaliation for Plaintiff's prior lawsuit against the psychiatrist.

g. Eighth Amendment deliberate indifference claim against the Warden of SVSP for alleged failure to supervise staff at the time of the incidents.

4. All claims against Doe defendants are DISMISSED WITHOUT PREJUDICE to Plaintiff naming these defendants in a separate filing, within 180 days, after he has an opportunity for discovery. If needed, Plaintiff may request additional time to name these defendants in a motion for extension of time.

5. All other claims and defendants are DISMISSED without leave to amend.

6. The Court REFERS this matter to the Federal Pro Se Program to secure pro bono counsel to represent Plaintiff in this action. The scope of this referral shall be for all purposes. The Clerk shall forward to the Federal Pro Se Program copies of:

a. This order;

b. The docket sheet; and

c. The amended complaint (ECF No. 40).

7. Once the Federal Pro Se Program informs the Court that counsel has been secured and counsel is appointed by the Court, or the Federal Pro Se Program determines that no suitable counsel is available to represent Plaintiff in this action, the Court will issue an order setting a dispositive motion briefing schedule.

8. Defendants Espinoza, Martinez, Officer Mendez, Psychiatrist Mendez, and the Warden shall be SERVED.

a. Service shall proceed under CDCR's e-service pilot program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the Clerk of the Court is directed to serve on CDCR via email the following documents: the operative complaint (ECF No. 40), this order, a CDCR Report of E-Service Waiver form, and a summons.

b. No later than **45 days** after service of this order via email on CDCR, CDCR shall provide the Court a completed CDCR Report of E-Service Waiver advising the Court whether defendants will be waiving service of process without the need for service by the United States Marshal Service ("USMS") or whether any defendant declined to waive service. CDCR also shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office, which, within **21 days of service**, shall file with the Court a waiver of service of process for the defendants waiving service.

c. Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-285 Form. The Clerk shall provide to the USMS the completed USM-285 form and copies of this order, summons, and operative complaint for service upon each defendant



United States District Court
Northern District of California

who has not waived service. The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

d. Additionally, the Clerk shall mail a copy of this order to Plaintiff.

9. All communications by Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

10. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further Court order is required before the parties may conduct discovery or schedule depositions.

11. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address." He also must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated: September 30, 2026

Eumi K. Lee
United States District Judge

United States District Court
Northern District of California